UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

RENANDO RAMIREZ,

        Movant,

                                        Case No. 1:04-CV-729

v.

                                        Hon. Gordon J. Quist

UNITED STATES OF AMERICA,

        Respondent.

                                  /

**REPORT AND RECOMMENDATION**

This matter is before the court on the movant's motion to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255.

**Background**

In a superseding indictment filed on September 24, 2002, movant was charged with conspiracy to distribute 1,000 kilograms or more of a mixture or substance containing a detectable amount of marijuana in violation of 21 U.S.C. §§ 846, 841(a)(1) and 841(b)(1)(A)(vii). *See United States v. Ramirez*, 1:02-cr-131(docket no. 44). Movant was arrested on October 9, 2002 and entered a plea of not guilty. *Id.* (docket no. 48). On August 4, 2003, a superseding information was filed charging movant with conspiracy to distribute 100 kilograms or more of a mixture or substance containing a detectable amount of marijuana in violation of 21 U.S.C. §§ 846, 841(a)(1) and 841(b)(1)(B)(vii). *Id.* (docket no. 110). That same day, movant entered into a written plea agreement and pled guilty to the superseding information. *Id.* (docket no. 112). Under the terms of the plea agreement, movant admitted the amount of marijuana involved in the conspiracy (i.e., at

least 100 kilograms), acknowledged that he understood the maximum penalty of 40 years and the mandatory minimum sentence of 5 years, and acknowledged that the court was not a party to the agreement. *Id.*

Movant was sentenced on November 4, 2003. *Id.* (docket no. 129). Movant, with an interpreter present, had no objection to the pre-sentence report.[1] The court advised movant that he stood convicted of conspiracy to distribute more than 100 kilograms of marijuana, which carried a mandatory minimum penalty of 5 to 40 years' imprisonment and a fine of up to $2 million. The sentencing guidelines, which were adjusted to reflect acceptance of responsibility and a prior criminal history, resulted in a minimum sentence of 87 to 108 months with 3 to 5 years' supervised release. The presentence report recommended a sentence of 97 months' incarceration and four years of supervised release.

At the sentencing, movant stated through an interpreter that he was sorry for what he had done. The court adopted the plea agreement and imposed a sentence of 90 months imprisonment and supervised release of 4 years. *Id.* (docket no. 129). All remaining counts and charges were dismissed. *Id.* The court advised movant of his right to appeal his sentence and that a notice of appeal needed to be filed within 10 days. Movant signed a "Receipt for Appeal Documents" that day, in which he acknowledged receipt of a notice of appeal, an information sheet regarding "filing notices of appeal" and other documents related to appealing the court's judgment of sentence. *Id.* (docket no. 128). Movant did not appeal his sentence.

---

[1] There is no official copy of movant's sentencing transcript and movant has not requested the preparation of an official copy of the transcript. However, the court has received an unofficial transcript of the sentencing. The court has no reason to believe that this unofficial transcript does not reflect the substance of the hearing.

In the present motion, movant states that he wanted to pursue an appeal of his sentence, but his counsel did not consult with him about the appeal and did not discuss the advantages or disadvantages of taking an appeal. Motion at ¶ 2. Movant apparently contends that a language barrier affected his ability to request an appeal:

> Because Mr. Ramirez had limited fluency in English, most attorney-client communication was made through Mrs. Martinez[2] acting as an interpreter. However, defense counsel did not discuss the case with Mrs. Ramirez to determine whether Mr. Martinez [sic] wanted to appeal[.]

*Id.* at ¶ 3. Movant's wife allegedly attempted to contact his counsel, Ms. Helen C. Nieuwenhuis, "to instruct counsel to file an appeal, but was unable to do so." *Id.* at ¶ 4. Movant further alleges that he was deprived of his right to appeal and that "by failing to discuss the advantages and disadvantages of filing an appeal, defense counsel failed to provide proper representation to Mr. Ramirez." *Id.* at ¶¶ 7-8.

In an affidavit in support of the petition, Ms. Nieuwenhuis stated in pertinent part as follows:

  2.  Due to the fact that Mr. Ramirez [movant] spoke little English, I communicated with him primarily through his wife, Odelia Ramirez.

  3.  Immediately following his sentencing, I did not have an opportunity to meet with Mr. Ramirez and consult with him about an appeal. At no time did I discuss the advantages and disadvantages of an appeal with him.

  4.  I did not discuss this case with Mrs. Ramirez to determine if Mr. Ramirez wished to appeal.

  5.  It is my understanding that Mrs. Ramirez tried to contact me to file an appeal, but did not receive any messages, apparently due to my being without permanent office staff and having to use temporary help.

---

[2] Mrs. Martinez was a court interpreter in the case. However, it appears movant is actually referring to Mrs. Ramirez in this instance. See, for example, paragraph 2 of the Nieuwenhuis affidavit, *infra.*

Nieuwenhuis Aff. (attached to petition).

Movant's § 2255 motion raises the single issue of ineffective assistance of counsel. Specifically, whether he is entitled to take a delayed appeal due to his counsel's failure to consult with him regarding the advantages and disadvantages of filing an appeal.

## Discussion

### I. § 2255 motion

An action brought pursuant to 28 U.S.C. § 2255 is "an independent and collateral inquiry into the validity of the conviction." *United States v. Hayman*, 342 U.S. 205, 222 (1952). This statutory section allows a federal prisoner to challenge a sentence imposed in violation of the Constitution or laws of the United States. *United States v. Addonizio*, 442 U.S. 178, 185 (1979). It is not the guilt or innocence of a defendant that is at issue in a § 2255 proceeding, but rather the validity and fairness of the proceedings against him. *United States v. Kastenbaum*, 613 F.2d 86, 89 (5th Cir. 1980).

A movant is entitled to habeas relief under § 2255 if the record reflects an error of constitutional magnitude which had a substantial and injurious effect on the jury's verdict or the movant's plea. *Brecht v. Abrahamson,* 507 U.S. 619, 637 (1993). To establish a right to habeas relief on nonconstitutional error (i.e., statutory or rule error, such as under the federal sentencing guidelines), the record still must reflect an error of constitutional dimension, such as a fundamental defect in the proceedings that inherently results in a complete miscarriage of justice or an omission inconsistent with the rudimentary demands of fair procedure. *See Reed v. Farley,* 512 U.S. 339 (1994); *Nagi v. United States,* 90 F.3d 130, 133-34 (6th Cir. 1996).

## II.     Ineffective assistance to file an appeal

Movant contends that his counsel was constitutionally ineffective for failing to file an appeal of his sentence. In order to prevail on a claim of ineffective assistance of counsel, movant must establish: (1) that counsel's performance fell below an objective standard of reasonableness, and (2) that there is a reasonable probability that, but for the deficiency, the outcome of the proceedings would have been different. *Griffin v. United States*, 330 F.3d 733, 737 (6th Cir. 2003), citing *Strickland v. Washington*, 466 U.S. 668, 694 (1984). For purposes of establishing ineffective assistance of counsel, a "reasonable probability" that counsel's deficiency resulted in a different outcome means "a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694.

The test for assessing ineffective assistance of counsel for failing to file a notice of appeal is the two-pronged inquiry of *Strickland*. *See Roe v. Flores-Ortega*, 538 U.S. 470, 477 (2000); *Regalado v. United States*, 334 F.3d 520, 524 (6th Cir. 2003). The first prong of this inquiry requires the court to ask whether the trial counsel's performance fell below the reasonably expected professional standard. *Regalado*, 334 F.3d at 524. Under *Strickland*, courts must judge the reasonableness of counsel's challenged conduct on the facts of the particular case viewed at the time of the conduct. *Id. citing Flores-Ortega*, 528 U.S. 477. "[J]udicial scrutiny of counsel's performance must be highly deferential." *Flores-Ortega*, 528 U.S. at 477. The second prong of the *Strickland* test requires the court to determine whether counsel's deficient performance prejudiced the defendant. *Id.* In the context of counsel's failure to file an appeal, "a defendant must demonstrate that there is a reasonable probability that, but for counsel's deficient failure to consult with him about an appeal, he would have timely appealed." *Id.* at 484.


The court applies three rules in determining whether counsel was deficient for not filing a notice of appeal. First, it is clearly "professionally unreasonable" for a lawyer to fail to file an appeal when he is specifically instructed to do so by a client. *Regalado*, 334 F.3d at 524-25, *citing Flores-Ortega*, 528 U.S. at 477. Counsel's failure to perfect a direct appeal upon a client's request is a *per se* Sixth Amendment violation. *Ludwig v. United States*, 162 F.3d 456, 459 (6th Cir. 1998). In such cases, "a defendant is entitled to a delayed appeal and need not show any likelihood of success on the merits." *Regalado*, 334 F.3d at 525. This rule does not apply in the present case because movant never instructed counsel to file an appeal and does not claim that he asked counsel to file an appeal. In counsel's affidavit, she speculates that movant's wife attempted to contact her about an appeal. While counsel states that it was "her understanding" at some point that Mrs. Ramirez tried to contact her to file an appeal, counsel does not state how she gained this knowledge, and there is no suggestion that counsel had this "understanding" prior to this § 2255 motion being prepared. Counsel's speculative statements are insufficient to establish that movant either instructed his wife to contact counsel or that his wife actually attempted to contact counsel. Conspicuously absent from the record are affidavits from either movant or his wife outlining their arrangements to contact counsel or explaining when movant's wife allegedly attempted to contact counsel. Accordingly, there is no basis to view this case as involving a *per se* Sixth Amendment violation due to counsel's failure to perfect a direct appeal upon movant's request.

Second, in cases where the client has neither told his counsel to file an appeal nor told his counsel not to file an appeal, the court must evaluate counsel's performance by determining whether counsel "consulted" with the defendant about the benefits and drawbacks of bringing an appeal. *Id., citing Flores-Ortega*, 528 U.S. at 478. A "consultation" occurs by counsel "advising

the defendant about the advantages and disadvantages of taking an appeal, and making a reasonable effort to discover the defendant's wishes." *Flores-Ortega*, 528 U.S. at 478. If counsel has consulted with the defendant, then "[c]ounsel performs in a professionally unreasonable manner only by failing to follow the defendant's express instructions with respect to an appeal." *Id.* This rule does not apply to the present case because counsel admits in her affidavit that no consultation occurred.

Third, if counsel fails to consult with the defendant, then the court must address the question of whether the failure to consult, by itself, indicates deficient performance. *Id.* The failure to consult with a client about an appeal does not necessarily imply deficient performance. As the Supreme Court observed in *Flores-Ortega*:

> We cannot say, as a *constitutional* matter, that in every case counsel's failure to consult with the defendant about an appeal is necessarily unreasonable, and therefore deficient. Such a holding would be inconsistent with both our decision in *Strickland* and common sense.

*Id.* at 479. (Emphasis in original.) Since counsel admits that she never consulted with movant, the issues before the court are (1) whether counsel's failure to consult with movant was unreasonable and constituted deficient performance and (2) whether movant was prejudiced by the deficient performance. *See id.* at 478-79.

### A. Counsel's failure to consult did not amount to deficient performance

"[C]ounsel has a constitutionally imposed duty to consult with the defendant about an appeal when there is reason to think either (1) that a rational defendant would want to appeal (for example, because there are nonfrivolous grounds for appeal), or (2) that this particular defendant reasonably demonstrated to counsel that he was interested in appealing." *Flores-Ortega*, 528 U.S. at 480. "In making this determination, courts must take into account all the information counsel

knew or should have known." *Id.* A highly relevant factor is "whether the conviction follows a trial or a guilty plea, both because a guilty plea reduces the scope of potentially appealable issues and because such a plea may indicate that the defendant seeks an end to judicial proceedings." *Id.* When a defendant pleads guilty, the court must consider such relevant factors as whether the defendant received the sentence bargained for as part of the plea and whether the plea expressly reserved or waived some or all appeal rights. *Id.* "Only by considering all relevant factors in a given case can a court properly determine whether a rational defendant would have desired an appeal or that the particular defendant sufficiently demonstrated to counsel an interest in an appeal." *See, e.g., Cummings v. United States*, 84 Fed. Appx. 603, 605 (6th Cir. 2003) (counsel is not deficient for failing to consult with a criminal defendant with respect to filing an appeal, where the defendant pled guilty, received the benefit of his plea bargain and his other claims did not raise viable grounds for appeal).

### 1. Movant had no "nonfrivolous grounds" to appeal his sentence

After considering all of the relevant factors, I conclude that counsel's failure to consult with movant did not constitute defective performance. Here, movant pled guilty pursuant to an eight-page plea agreement. *See United States v. Ramirez*, 1:02-cr-131(docket no. 112). The plea agreement did not waive movant's right to appeal and he received the standard information package of appeal documents. *Id.* (docket no. 128). Movant received a sentence within the parameters as set forth in the plea agreement. The applicable guideline range was determined to be 87 to 108 months, and there was a recommendation of 97 months imprisonment from the probation office. His sentence of 90 months of imprisonment is at the low end of the guidelines range, 7 months less than the probation office recommendation, only 2 1/2 years greater than the mandatory

5-year minimum sentence, and only a fraction of the possible 40 year maximum sentence. Movant received a substantial benefit from the dismissal of the superseding indictment for a conspiracy involving 1,000 kilograms of marijuana, a more serious crime which carries a minimum sentence of 10 years' imprisonment and maximum sentence of life imprisonment. *See* 21 U.S.C. § 841(b)(1)(A)(vii). Movant also received the government's agreement not to oppose movant's request for a reduction of offense level for acceptance of responsibility and agreed not to bring additional criminal charges arising out of the activity alleged in the Superseding Information. *See United States v. Ramirez*, 1:02-cr-131 (docket no. 112). Under these circumstances, it can certainly be said that movant received the benefit of his plea agreement.

The court also rejects movant's claims that he had two nonfrivolous arguments for appeal. First, movant states that "he initially objected to the amount of marijuana for which he was being held accountable at his sentencing." *See* Motion and Memorandum at 3. Movant contends that this initial objection "arguably" created a nonfrivolous ground for appeal. *Id.* I disagree. Movant pled guilty to the charge of conspiracy to distribute more than 100 kilograms of marijuana. The government's sentencing memorandum states that "[a]lthough the presentence report reflects an objection on drug quantity, the government understands that [movant] is no longer pursuing that objection." Government's Sentencing Memorandum at 1. Movant's presentence investigation report indicates that his counsel initially telephoned the probation officer to object to the amount of marijuana (calculated as 800.6 kilograms). In response, the probation officer spoke with the United States Attorney's office and obtained information regarding the government's proofs to support this amount. There is no evidence that movant pursued this preliminary objection any further. Movant did not file a written objection to the presentence report or the government's sentencing

9

memorandum, and movant made no objection to the presentence report at his sentencing. Indeed, movant admits that he did not pursue this objection. Motion and Memorandum at 3. Movant presents nothing to demonstrate the existence of a valid objection to the drug quantity. Accordingly, I find that movant's newly asserted objection is frivolous.

For his second nonfrivolous appellate argument, movant contends that "depending on the Supreme Court's resolution of the pending *Booker* and *Fanfan* cases, [he] may have a Constitutional challenge to his sentence." *Id.* Movant bases his argument on the rule of law as announced in *United States v. Booker*, 543 U.S. 220 (2005), in which the Supreme Court found the Sentencing Guidelines are advisory rather than mandatory. *See, e.g., United States v. Barnett*, 398 F.3d 516, 523-24, 531 (6th Cir. 2005) ("under *Booker*, the Sentencing Guidelines are now advisory in all cases" with the result that cases on direct review in which the sentencing judge applied the guidelines as mandatory are subject to having the defendant's sentence vacated and remanded for resentencing). Movant's argument is without merit and based upon sheer hindsight.

It is true that *Booker* and *Fanfan* were pending before the Supreme Court when movant filed his § 2255 motion on November 1, 2004. Significantly, neither case was pending before the Supreme Court when movant was sentenced on November 4, 2003. Even the Seventh Circuit did not decide *Booker* until July 9, 2004. *United States v. Booker*, 375 F.3d 508 (2004). Similarly, the U.S. District Court for the District of Maine did not decide *Fanfan* until June 28, 2004, more than six months after movant's sentencing. *See U.S.A. v. Fanfan*, No. 03-47, 2004 WL 1723114 (D. Me. June 28, 2004). These two cases did not appear on the national legal landscape until the Supreme Court granted a writ of certiorari on August 2, 2004. *United States v. Booker*, 542 U.S. 956 (2004); *United States v. Fanfan*, 542 U.S. 956 (2004) (*cert. granted before judgment*). In

short, the *Booker/Fanfan* issue (i.e., contesting the validity of the federal Sentencing Guidelines) did not exist when movant was sentenced in November 2003.[3] Movant cannot re-write history and contend that the 2005 *Booker* decision formed a basis in November 2003 for appealing his sentence.

In the absence of a nonfrivolous appellate issue, movant was not prejudiced by counsel's failure to consult regarding an appeal. Movant has not set forth any ground which would have given his counsel a reason to think that a rational defendant would want to appeal the sentence. Accordingly, movant has not met the first part of the *Flores-Ortega* test.

### 2. Movant did not reasonably demonstrate to counsel that he was interested in appealing.

Next, movant has not established that he reasonably demonstrated an interest in appealing his conviction and sentence. Movant received significant benefits from the plea agreement, including the dismissal of a more serious drug offense. Movant's allegation that his request for an appeal was thwarted by a language barrier is unsupported by the record. Movant was provided with an interpreter to assist him in the proceedings. His wife was also available to assist. At sentencing, the court advised movant that he had a right to appeal his sentence, that if he could not afford a lawyer one would be appointed for him, and that he had to file a notice of appeal within ten days. Movant signed a receipt for the notice of appeal and related appellate information at his sentencing.

As previously discussed, counsel's affidavit did not reflect any personal knowledge that movant's wife attempted to contact her to file an appeal. Although movant contends that his wife acted on his behalf, nothing in the record suggests that movant authorized his wife to

---

[3] Respondent further observes that the Supreme Court's decision in *Blakely v. Washington*, 542 U.S. 296 (2004), in which the court found a state sentencing scheme unconstitutional, was not decided until after movant's sentencing.

communicate a decision to take an appeal to counsel or that she attempted to reach counsel with a request to file an appeal within ten days of movant's sentencing. While movant's § 2255 motion includes an affidavit from his trial counsel, the motion does not include an affidavit or sworn statement from either movant or his wife: (1) explaining movant's alleged instructions to his wife; or, (2) outlining the dates and times that his wife attempted to contact counsel for the purpose of requesting an appeal. Movant has not filed copies of any letters, telephone records, or other documents indicating that his wife attempted to contact counsel regarding the filing of an appeal. Accordingly, movant has not met the second part of the *Flores-Ortega* test.

### B. Prejudice

Furthermore, even if counsel was deficient, movant has not demonstrated that he was prejudiced by the counsel's failure to file an appeal. To establish prejudice in the context of counsel's failure to file an appeal, "a defendant must demonstrate that there is a reasonable probability that, but for counsel's deficient failure to consult with him about an appeal, he would have timely appealed." *Flores-Ortega*, 528 U.S. at 484. Stated another way, "had the defendant received reasonable advice from counsel about the appeal, he would have instructed his counsel to file an appeal." *Id.* at 486.

Movant has today presented only two grounds for appeal: the objection to the amount of marijuana listed in the presentence report which he had previously abandoned, and the *Booker/Fanfan* sentencing issue which did not even exist. As previously discussed, neither of these issues qualify as a nonfrivolous ground for an appeal. Movant has made no showing that he would have instructed counsel to file an appeal after receiving reasonable advice from counsel on these two issues. Movant admits that the objection to the presentence report is at most an "arguably"

nonfrivolous ground for appeal. It would not be reasonable for counsel to advise defendant to appeal the amount of marijuana as set forth in the presentence report, when movant agreed with the amount stated in the report. Finally, counsel could not give any advice, let alone "reasonable" advice, on the merits of pursuing an appeal based upon the *Booker/Fanfan* decisions, which were not issued by the courts of appeal, much less the Supreme Court, until long after movant's sentencing. Accordingly, movant has failed to demonstrate that he was prejudiced by counsel's failure to file an appeal.

### Conclusion

This court does not endorse counsel's failure to consult with movant regarding the filing of an appeal. *See Flores-Ortega*, 528 U.S. at 479 ("the better practice is for counsel routinely to consult with the defendant regarding the possibility of an appeal"). However, movant has simply not established that counsel's failure to consult with him amounted to ineffective assistance of counsel in this particular instance. I respectfully recommend that movant's motion for relief pursuant to § 2255 be **DENIED**.

Dated: April 19, 2006      /s/ Hugh W. Brenneman, Jr.
                           Hugh W. Brenneman, Jr.
                           United States Magistrate Judge


ANY OBJECTIONS to this Report and Recommendation must be served and filed with the Clerk of the Court within ten (10) days after service of the report. All objections and responses to objections are governed by W.D. Mich. LCivR 72.3(b). Failure to serve and file written objections within the specified time waives the right to appeal the District Court's order. *Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).